728 So.2d 888 (1998)
Perrin C. BUTLER
v.
O. William REEDER, Jr., D.M.D., et al.
No. 98-CA-484.
Court of Appeal of Louisiana, Fifth Circuit.
December 29, 1998.
Opinion on Grant of Rehearing March 15, 1999.
*889 Robert C. Stern, New Orleans, Louisiana, In Proper Person as Defendant/Appellant, Robert C. Stern.
Perrin C. Butler, Metairie, Louisiana, In Proper Person as Plaintiff/Appellant, Perrin C. Butler.
James F. Ryan, Donovan & Lawler, Metairie, Louisiana, for Defendant/Appellee, United Fire and Casualty Company.
Wiley J. Beevers, Ronald S. Hagan, Raylyn R. Beevers, Gretna, Louisiana, for Defendants/Appellees, O. William Reeder, Jr., D.M.D., et al.
*890 Panel composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and THOMAS F. DALEY.
DALEY, Judge.
This is an appeal by Perrin C. Butler and Robert C. Stern from a judgment of the trial court that levied sanctions against them. For reasons which follow, we affirm the decision of the trial court in determining that sanctions were appropriate in this case and amend the judgment to decrease the amount of the sanction award.

FACTS AND HISTORY:
The events leading up to the present appeal stem from the divorce of Perrin Butler and Mary Andrews Butler.[1] Mr. Butler discovered that his wife was having an affair with Dr. O. William Reeder, and filed suit for divorce, alleging among other things, adultery and drug abuse by Mrs. Butler. Mrs. Butler then filed an answer alleging various illicit and illegal acts by Mr. Butler that caused her to move out of the matrimonial domicile. Mrs. Butler eventually gave a deposition in which she acknowledged her adultery and testified Mr. Butler was free from fault in the breakup of the marriage. Various other lawsuits were filed between the parties and several issues in this long standing litigation have been appealed to this court[2].
The sanctions involved in this appeal originate from an action for defamation filed on November 16, 1989, by Perrin Butler against Wiley J. Beevers, Curtis Gordon, Dr. O. William Reeder, Mary Andrews Butler, and her homeowner's insurer, United States Fidelity and Guaranty (USF & G). In his petition, Perrin Butler alleges that he was defamed in Mary Butler's answer to the divorce petition. He contends that his former spouse wrote the answer, which contained information that she knew to be false and damaging to plaintiff. He goes on to allege that the answer was reviewed by Mr. Beevers, who is an attorney, at the request of Dr. Reeder, who allegedly paid Mr. Beevers for his representation of Mary Butler. The petition alleges that Gordon filed the defamatory answer into the record at the courthouse at Mr. Beevers' request. Plaintiff also alleges that all defendants are jointly liable for conspiring to defame him.
Mr. Beevers, Mr. Gordon, Dr. Reeder, and USF & G were dismissed from the suit by the granting of their Motion for Summary Judgment.[3] Following the denial of his Motion for New Trial, Mr. Butler appealed the judgment granting the summary judgment, claiming that the trial court erred in rendering these judgments in his absence. Mr. Butler argued that he did not appear at the hearing on the motion because he was informed by the attorney for USF & G that the motion was to be heard at a later date. The granting of these Motions for Summary Judgment was affirmed by this court in Butler v. Reeder, 615 So.2d 1120 (La.App. 5th Cir. 1993). Prior to appealing the judgment granting the Motions for Summary Judgment, Mr. Butler filed a Petition to Annul the Judgment granting the Motions for Summary Judgment. The Petition for Nullity was dismissed by the granting of Exceptions of No Cause of Action, and was affirmed by this court in Butler v. Reeder, 94-493 (La. App. 5th Cir. 2/9/94), 632 So.2d 401 and Butler v. Reeder, 93-764 (La.App. 5th Cir. 1994), 635 So.2d 1206.
On April 24, 1992, prior to the ruling on the appeals, Mr. Beevers, Mr. Gordon, and Dr. Reeder filed Motions for Sanctions and Attorneys Fees and Costs, alleging the action for defamation filed by Mr. Butler "was prepared and signed in contravention of the Louisiana Code of Civil Procedure Article 863 in that it was confected solely for the purpose of harassment and to cause needless expense" to the defendants. Reeder then filed an additional Motion for Sanctions, Attorney Fees and Costs alleging that Butler *891 and Stern "have prosecuted groundless appeals, all for the purpose of harassment and needless increase in the cost of litigation." Dr. Reeder's insurer, United Fire and Casualty Company, filed an Intervention seeking to recover for attorneys fees and costs "incurred to the extent that such amounts are found to be owed in this Motion for Sanctions, Attorneys Fees and Costs."
The trial court conducted a hearing on these motions that spanned two days.[4] During this hearing, Mr. Butler testified that he signed Mr. Stern's name to the original Petition for Damages in the defamation suit. Mr. Butler explained that he and Mr. Stern had been in practice together for many years. He acknowledged that the answer to the divorce petition was signed in proper person by Mary Andrews Butler. Mr. Butler further testified that he knew that Mr. Beevers and Dr. Reeder were long time friends and business associates. Mr. Butler claimed he had been told by his former wife that Mr. Beevers had reviewed her answer in the divorce petition and that Dr. Reeder was paying Mr. Beevers for these services; however, Mr. Butler was unable to give any information regarding when or where he was given this information by his ex-wife. He had no documents or recordings to support this contention. Mr. Butler further testified that he contacted an attorney by the name of Nelson Cantrelle, whom he knew had previously represented the 24 th Judicial District Clerk of Court's Office and asked Mr. Cantrelle to find out the identity of the individual who filed the answer in the divorce proceeding. Mr. Cantrelle called the Clerk of Court's office and spoke to an unidentified female employee who told him the answer was filed by Curtis Gordon, who was an attorney employed by Wiley Beevers' office. Mr. Butler was unable to state when and where Mr. Gordon was directed by Mr. Beevers to file the answer, as alleged in the defamation suit. Mr. Butler acknowledged that no one specifically told him that Mr. Beevers refused to sign the answer in the divorce proceeding, as alleged in the defamation suit.
Mr. Stern testified that he did not prepare or review the petition in the defamation suit, nor was he aware that such a suit was being filed. He did admit to participating in discovery in the defamation suit and representing Mr. Butler during the pendency of the defamation suit. Mr. Stern explained that he filed the Petition for Nullity because he was under the impression that the Motion for Summary Judgment had been continued. Mr. Stern acknowledged being aware of an Affidavit from a client of Mr. Gordon's which stated that she was in conference with Mr. Gordon at the time the answer in the divorce proceeding was filed. Mr. Stern was also aware of the Affidavit filed by Mary Andrews Butler stating that Mr. Beevers did not review the answer and that Mr. Gordon did not file the answer. These Affidavits were attached to the Motions for Summary Judgment. Mr. Stern acknowledged that he had no more information concerning the filing of the answer than the representations made by Mr. Cantrelle to Mr. Butler, and further explained that he felt the factual disputes as to who filed the answer was for the trier of fact to resolve.
Mr. Cantrelle testified that at Mr. Butler's request, he called the Clerk of Court's office and spoke to an unidentified female clerk who informed him that an attorney in Mr. Beevers' office, Mr. Gordon, filed the answer. Mr. Cantrelle never went to the courthouse to determine the identity of the person he spoke to on the phone.
Ms. Gladys McGaughey, the Deputy Clerk whose name appears on the answer, testified that she had no independent recollection of who filed this answer. She did recall a phone call from an unidentified male inquiring as to the identity of the person who filed the answer. She responded that she did not know who filed the answer and specifically denied stating that Mr. Gordon filed the answer. Ms. McGaughey stated that she would have recognized Mr. Cantrelle's voice on the *892 phone and that the person who called regarding this answer was not Mr. Cantrelle.
Mary Andrews Butler Reeder[5] testified that she worked in Mr. Butler's law office for approximately twelve of the thirteen years while they were married. She explained that when she was served with the Petition for Divorce, which she felt contained numerous untruths about her, she drafted an answer to this petition addressing each of these allegations. Although Mr. Beevers had filed a Petition for Separation on her behalf two days after the Petition for Divorce was filed, she denied asking Mr. Beevers to review the answer. She further denied discussing the answer with either Mr. Beevers or Dr. Reeder. Mrs. Reeder further explained that when she went to file the answer, she noted that she had failed to include a Certificate and for this reason she hand wrote the Certificate at the clerk's counter. After filing the answer, she delivered a copy of the answer to Mr. Beevers' office. She denied telling her former husband that Mr. Beevers reviewed the answer at the request of Dr. Reeder or that Mr. Beevers refused to sign the answer. She did acknowledge that she retained Mr. Beevers to represent her in the divorce proceeding and that Dr. Reeder loaned her the money to pay the attorney's fees incurred.
Dr. Reeder testified that he was not aware of the answer until after it was filed, nor did he ask Mr. Beevers to review the answer. He denied conspiring with Mr. Beevers to obtain money from Mr. Butler. Dr. Reeder testified that his excess insurer, United Fire and Casualty, retained an attorney to represent him in the defamation suit and that he did not pay any attorneys fees in connection with that suit. He further testified that he retained Mr. Beevers to represent him in the Motion for Sanctions for a flat fee of $10,000.00, which he had not paid at the time of the hearing. Finally, he testified that he spent approximately 103 hours defending the defamation suit.
Mr. Gordon denied filing the answer in the divorce proceeding, testifying that at the time the answer was filed, he was an employee of Mr. Beevers' law firm and was in conference with a client. He entered into a contract with Mr. Beevers to represent him in the defamation suit. At the time of the hearing, he had not paid Mr. Beevers for these services. He also entered into a contract to represent Mr. Beevers in this proceeding and, at the time of the hearing, had not been paid for those services. He and Mr. Beevers continued to represent each other even after Mr. Gordon left the employ of Mr. Beevers.
Mr. Beevers testified that he represented Mrs. Reeder in her divorce proceeding, but he denied preparing or reviewing the answer to the divorce petition before it was filed. He denied asking Mr. Gordon to file the petition. Mr. Beevers testified that he contracted with Mr. Gordon to represent him in the defamation suit. Mr. Beevers explained that neither his fee nor Mr. Gordon's fee had been paid at the time of the hearing and as in accordance with standard procedures at his law firm, these bills had accrued interest.
At the conclusion of the hearing, the trial judge made the following findings of fact:
(1) Although Mr. Stern did not actually sign the petition in the defamation suit, he participated in the case for eight years after the original petition was filed and made no attempt to remove his name from the petition, therefore, the physical non-signing of the petition by Mr. Stern does not exempt him from sanctions under article 863.
(2) Sufficient investigation into the facts was not performed prior to filing the petition. Mr. Butler's testimony that his former wife told him who reviewed and filed the answer was disputed by her testimony at the hearing. Several times Mr. Stern stated that he could not put any credibility in what Mrs. Reeder said and yet they believed her alleged statements as to who was involved in filing the answer and this resulted in the defamation suit being filed.
(3) There was ample time to do further investigation into the facts related to *893 the alleged conspiracy prior to filing the suit for defamation.
(4) Mr. Butler stated during the hearing that he did not know what happened at various times and if he did not know what happened he should not have made these allegations against the defendants.
(5) The inquiry made into the circumstances was not reasonable and could have been much more reasonable.
(6) The filing of the nullity opened up both Mr. Stern and Mr. Butler to sanctions.
The trial judge concluded that sanctions under Article 863 were appropriate and ordered the parties to submit post-trial memoranda on the amount of the sanctions.
The defendants argued in their memorandum that Mr. Gordon's attorney fees and costs (owed to Mr. Beevers) totaled $13,802.20 plus interest, and Mr. Beevers attorneys fees and costs (owed to Mr. Gordon) totaled $8,491.39. United Fire and Casualty Company argued they expended $26,875.80 attorneys fees and costs in defending Dr. Reeder in the defamation suit. Dr. Reeder contends he paid $10,000.00 attorneys fees in the sanctions matter and suffered $30,900.00 in lost income from time spent in defending the defamation suit.
The trial court rendered judgment in favor of Dr. Reeder in the amount of $20,000.00, Mr. Beevers in the amount of $20,000.00, and Mr. Gordon in the amount of $20,000.00. The judgment also awarded United Fire and Casualty Company $26,875.80. These sanctions were levied against Mr. Butler and Mr. Stern in solido. In written reasons for judgment, the trial judge stated that the sanctions awarded included sanctions for the nullity suit that was allotted to a different division and attorneys fees and costs for both appeals. The court noted that it had presided over this case since the original petition was filed in 1989, hearing numerous motions and participating in extensive conferences, making the court aware of the amount of time the parties and their attorneys devoted to this case. In arriving at the amount of sanctions, the court considered the attorneys fees as well as time lost from pursuing their own livelihood.
Mr. Stern and Mr. Butler have appealed the judgment of the trial court listing several assignments of error.

DISCUSSION
Sanctions on an attorney are provided for by LSA-C.C.P. art 863, which reads as follows:
A. Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading and state his address.
B. Pleadings need not be verified or accompanied by affidavit or certificate, except as otherwise provided by law, but the signature of an attorney or party shall constitute a certification by him that he has read the pleading; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact; that it is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.
C. If a pleading is not signed, it shall be stricken unless promptly signed after the omission is called to the attention of the pleader.
D. If, upon motion of any party or upon its own motion, the court determines that a certification has been made in violation of the provisions of this Article, the court shall impose upon the person who made the certification or the represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.
E. A sanction authorized in Paragraph D shall be imposed only after a hearing at which any party or his counsel may *894 present any evidence or argument relevant to the issue of imposition of the sanction.
F. A sanction authorized in Paragraph D shall not be imposed with respect to an original petition which is filed within sixty days of an applicable prescriptive date and then voluntarily dismissed within ninety days after its filing or on the date of a hearing on the pleading, whichever is earlier.
As can be seen from a reading of Article 863, there is an affirmative duty imposed on the attorneys and the litigants to make an objectively reasonable inquiry into the facts and the law. Sternberg v. Sternberg, 97-101 (La.App. 5th Cir. 5/28/97), 695 So.2d 1068.
Among the factors to be considered in determining whether reasonable factual inquiry has been made are:
1) The time available to the signer for investigation;
2) The extent of the attorney's reliance on his client for the factual support for the document;
3) The feasibility of a prefiling investigation;
4) Whether the signing attorney accepted the case from another member of the bar or forwarding attorney;
5) The complexity of the factual and legal issues; and
6) The extent to which development of the factual circumstances underlying the claim requires discovery.
Loyola v. A Touch of Class Transportation Service, Inc., 580 So.2d 506, 510 (La.App. 4th Cir. 1991).
There is a two step standard of appellate review of a sanction award. In reviewing the trial court's factual finding that Article 863 was or was not violated, we must use the "manifest error" or "clearly wrong" standard. Once a violation of Article 863 is found and sanctions are imposed, we must review the amount of sanctions using the "abuse of discretion" standard. Penton v. Clarkson, 93-657 (La.App. 1st Cir. 3/11/94), 633 So.2d 918.
Applying these well settled principles to the case before us, we cannot say the trial court committed manifest error in finding Mr. Butler and Mr. Stern violated Article 863. Clearly there was ample time to investigate the allegations in the petition, since the defamation suit was filed over three months after the filing of the answer. The testimony at the hearing made it clear that the only inquiry conducted by Mr. Butler prior to filing the defamation suit was to ask a friend to call the Clerk's office to determine who filed the answer. His friend spoke to an unidentified employee of the Clerk's office who informed him that Mr. Gordon, an employee of Mr. Beevers' office, filed the answer. Mr. Butler took no further steps to confirm the veracity of this information in making allegations against Mr. Gordon and Mr. Beevers. Mr. Butler then relied on statements of his ex-wife in alleging Dr. Reeder requested and paid for Mr. Beevers to review the answer.
Upon determining that a violation of Article 863 has occurred, the trial court has considerable discretion regarding the type and severity of sanctions to be imposed. Joyner v. Wear, 27,631 (La.App. 2nd Cir. 12/6/95), 665 So.2d 634. Article 863 authorizes an award of "appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee." The amount of the sanctions imposed is reviewed under the abuse of discretion standard. Sternberg, supra.
There are no Louisiana state courts cases giving us guidance as to factors to consider in formulating the amount of the sanction award for sanctions imposed under Article 863. Article 863 is derived from Federal Rule of Civil Procedure 11 and thus the federal decisions offer guidance in determining whether the amount of the sanctions imposed was an abuse of discretion.
Article 863 allows an award of "reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee." In interpreting "reasonable expenses" and a "reasonable attorney's fee" under Rule 11, the courts have held that *895 what is reasonable must be considered in tandem with the goals of the rule, which are deterrence, punishment, and compensation. Thomas v. Capital Sec. Services, Inc. 836 F.2d 866 (5th Cir. 1988). Four factors have evolved which must be considered in arriving at an appropriate sanction award. They are:
1. What conduct is being punished or is sought to be deterred by the sanction?
2. What expenses or costs were caused by the violation of the rule?
3. Were the costs or expenses "reasonable" as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention?
4. Was the sanction the least severe sanction adequate to achieve the purpose of the rule under which is was imposed?
Topalian v. Ehrman, 3 F.3d 931 at 937 (5th Cir. 1993).
Applying these factors to the case before us, we find that the conduct sought to be deterred by the trial court in this case is the filing and pursuit of meritless claims without proper investigation. There is testimony and evidence to prove that the costs and fees incurred by the plaintiffs were caused by the filing of the defamation lawsuit. The trial court found that the claims against Mr. Beevers, Mr. Gordon, and Dr. Reeder were meritless and were not adequately investigated prior to filing suit. The record indicates that the amount of attorneys fees and costs incurred by Mr. Gordon is $13,802.20, Mr. Beevers is $8,491.39, Dr. Reeder is $10,000.00 and United Fire is $26,875.80.
Applying the third and fourth factors to the case before us leads to the conclusion that we must reduce the sanction awards imposed by the trial court. In seeking sanctions for defending against a frivolous lawsuit, a party has a duty to mitigate his expenses. Topalian, supra; Thomas, supra. We find that the defendants did not attempt to mitigate the attorney's fees incurred as a result of defending the defamation suit. Rather, they attempted to escalate the amount of the fees, using what the trial court termed "incestuous billing." That is, Mr. Beevers and Mr. Gordon worked at the same firm and represented each other in this action, both defending the same suit, which by necessity resulted in the two attorneys performing duplicate services.
The amounts of the sanctions awarded were not the least severe to accomplish the purpose for which sanctions were awarded. Therefore, we find the trial court abused its discretion in awarding $20,000.00 sanctions each to Mr. Beevers, Mr. Gordon, and Dr. Reeder. Based on the factors set forth above, we decrease the award to Mr. Beevers to $8,491.39, and we decrease the award to Mr. Gordon to $13,802.20.
We also find the trial court abused its discretion in awarding sanctions to Dr. Reeder. Dr. Reeder paid no attorney's fees in the defamation suit. His defense was provided by United Fire and Casualty, which was awarded sanctions. He contracted to pay Mr. Beevers to seek sanctions against Mr. Butler independent of United Fire. In his prayer for sanctions, Dr. Reeder included a request for lost income due to time spent defending the defamation suit. At the conclusion of the hearing, the trial judge stated that there was no provision in the law providing for reimbursement for each hour spent away from one's profession to defend a frivolous lawsuit. Yet the judgment rendered partially compensated Dr. Reeder for this alleged loss of income. It is also important to note that Mr. Beevers was seeking sanctions for Mr. Gordon and himself at the same time that he was representing Dr. Reeder in his claim for sanctions. We find the amount awarded to Dr. Reeder to be an abuse of discretion and lower the amount of sanctions awarded Dr. Reeder from $20,000.00 to $2,500.00.
We find the $26,875.80 sanctions in favor of United Fire and Casualty Company to be appropriate, since it is undisputed that this is the amount of money United Fire paid its attorney to defend its insured, Dr. Reeder.
Appellants argue that the trial court was without authority to award attorneys fees for the nullity suit and the two appeals. The nullity suit and the two appeals were necessitated due to the filing of original defamation suit, which the trial court held was filed in violation of Article 863. We hold that the trial court's consideration of fees incurred *896 in legal matters stemming directly from the filing of the defamation suit was not an abuse of discretion.
We find the trial court correctly imposed these sanctions against Mr. Stern and Mr. Butler in solido. Although Mr. Stern did not physically sign the original pleading, he actively participated in this suit for eight years, not resigning as Mr. Butler's attorney of record until he was told by the Louisiana Bar Association that he must resign or face disciplinary action. Mr. Stern testified that he did not take any steps to confirm the accuracy of the allegations in the defamation suit and stated that Mrs. Reeder could not be believed. Under these circumstances the trial court did not abuse its discretion in imposing sanctions against both Mr. Stern and Mr. Butler.
For the foregoing reasons, the judgment of the trial court is amended to decrease the award of sanctions to Mr. Gordon from $20,000.00 to $13,802.20, to decrease the award to Mr. Beevers from $20,000.00 to $8,491.39, and to decrease the award of sanctions to Dr. Reeder from $20,000.00 to $2,500.00. All other aspects of the trial court are affirmed. Each party is to bear their own costs of appeal.
AFFIRMED IN PART; AMENDED IN PART; AND REVERSED IN PART.

ON REHEARING
On rehearing, we affirm the original opinion rendered on December 29, 1998.
NOTES
[1] During these proceedings, Mary Andrews Butler married Dr. Reeder.
[2] Butler v. Reeder, 573 So.2d 1159 (La.App. 5th Cir. 1991); Butler v. Reeder, 615 So.2d 1120 (La.App. 5th Cir. 1993); Butler v. Reeder, 628 So.2d 99 (La.App. 5th Cir. 1993); Butler v. Reeder, 94,493 (La.App. 5th Cir. 2/9/94), 632 So.2d 401; Butler v. Reeder, 93,764 (La.App. 5th Cir. 1994), 635 So.2d 1206.
[3] The suit against Mary Andrews Butler was settled and dismissed.
[4] Prior to the hearing on the motion for sanctions, Mr. Butler filed a motion to recuse the trial judge. Judgment was rendered, denying the motion for recusal on March 17, 1997. In his brief filed in this appeal, Mr. Butler requests we find the trial court erred in denying this motion. However, the judgment denying the recusal was not timely appealed.
[5] See footnote number one.